OPINION
{¶ 1} Defendant, Nicholas Desman, appeals from his conviction for possession of cocaine, which was entered on his plea of no contest after the trial court had denied Desman's motion to suppress evidence obtained in what was initially a traffic stop.
{¶ 2} On January 9, 2002, Detective Paul Hutsonpillar, an officer of the Perry Township Police Department and a member of the C.A.N.E. Drug Task Force was alerted by another Perry Township police officer to a white Chevy Yukon with California license plates parked at a Brookville motel. It appears that the Yukon came to the police's attention as a result of routine police drive through of Montgomery County motel parking lots. The drive throughs are designed to locate vehicles with license plates from states that are known centers of narcotics trafficking. Police determined that the Yukon's license plates were registered to an individual with an Hispanic last name, while the hotel room was paid for in cash and registered to the name of "John Smith."
{¶ 3} Hutsonpillar in turn contacted Detective Donald Williams and Deputy Troy Bodine of the Montgomery County Sheriff's Department. Both Williams and Bodine are also members of the C.A.N.E. Drug Task Force. Bodine is the canine handler of "Jake," a narcotic detection dog.
{¶ 4} Hutsonpillar and Williams engaged in surveillance of the motel room. They observed the Defendant, Desman, and two other individuals get into the Yukon and leave the hotel parking lot. Desman was driving the vehicle. After the vehicle left the lot, Bodine, who had been waiting in his vehicle in another parking lot across from the hotel, and Hutsonpillar, followed in separate vehicles. They followed the Defendant's vehicle onto eastbound Interstate 70.
{¶ 5} On I-70, Bodine was approximately two car lengths behind the Yukon and Hustonpillar was approximately two to two and a half car lengths behind Bodine. While following the Yukon, Bodine observed it change into the left lane and pass a semi-truck that was in the right lane. After the Yukon passed the semi, Bodine then observed the Yukon turn on its right-hand turn signal and cut in front of the semi it had just passed. Bodine observed the semi brake and noticeably slow as a result of the Yukon's lane change. Hustonpillar also observed that the space between the Yukon and the semi was unsafe.
{¶ 6} Acting on what he had observed, Bodine executed a traffic stop for an unsafe lane change. After the Yukon pulled over, Bodine approached it and observed that Desman was driving the vehicle. Bodine requested that Desman provide his driver's license, registration and proof of insurance. Desman informed Bodine that he did not have proof of insurance or registration for the vehicle. Desman stated that he did not have the vehicle's registration because he had bought it from a friend who had bought the vehicle at an auction.
{¶ 7} Bodine observed that Desman appeared extremely nervous and that his hands were shaking and his voice was cracking. Bodine then asked Desman to step out of the vehicle.
{¶ 8} After Desman exited the vehicle, Bodine patted him down and placed him in the back seat of his marked Ford Expedition. Bodine then climbed into the front seat of his vehicle and began to run the information on Desman's California driver's license and the Yukon's California license plates on his mobile data terminal. While running Desman's information, Bodine asked Desman where he was going. Desman responded that he was headed to Richmond, Indiana. Bodine found this peculiar because Desman was headed east on I-70 and Richmond is to the west.
{¶ 9} While waiting for information to come back from the California Bureau of Motor vehicles, Bodine asked Desman if he could run his state certified narcotics canine around his vehicle. Desman stated that he could. Desman was then moved from Bodine's vehicle to Hustonpillar's vehicle. Bodine removed his narcotics dog from the rear of his vehicle and brought it to the Yukon. Bodine commanded his dog to search, and proceeded to walk his dog around the outside of the Yukon. The dog alerted when it got to the rear driver's side door, the rear cargo door and the rear passenger's side door.
{¶ 10} After the dog alerted, Bodine conducted an interior search of the Yukon, whereupon he found a duffle bag that contained a box of ammunition, a substance wrapped in duct tape that he suspected was marijuana, a cylinder wrapped in plastic, and duct tape and drug paraphernalia. A further search of the vehicle revealed one gram of cocaine hidden in the Yukon's built in booster seat.
{¶ 11} Desman was indicted by a Montgomery County Grand Jury for possessing less than five grams of cocaine, other than crack cocaine; trafficking in more than one hundred grams, but less than five hundred grams, of cocaine that is not crack cocaine and possessing more than one hundred grams, but less than five hundred grams, of cocaine, other than crack cocaine. Desman filed a motion to suppress the evidence seized during the January 9, 2002 traffic stop. Following an evidentiary hearing, the trial court issued a Decision, Order and Entry overruling Desman's motion. Desman then entered a plea of no contest to a bill of information charging a single possession violation.
{¶ 12} Desman now appeals offering five assignments of error.
FIRST ASSIGNMENT OF ERROR
{¶ 13} "The trial court erred to the prejudice of the appellant in making it's [sic] factual basis to support it's [sic] ruling that appellant's motion to suppress should be overruled."
SECOND ASSIGNMENT OF ERROR
{¶ 14} "The trial court erred to the prejudice of the appellant in finding that the evidence and testimony presented in an effort to justify the stop and search of appellant was competent and credible."
{¶ 15} Desman argues his first and second assignments of errors together. Accordingly, we will address the two assignments of error together as well.
{¶ 16} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Upon appellate review of a decision on a motion to suppress, the court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
{¶ 17} "[W]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Dayton v. Erickson (1996), 76 Ohio St.3d 3,11.
{¶ 18} To have probable cause to issue a traffic citation, an officer must have information sufficient in its nature and character to warrant a prudent person in believing that a violation of law has occurred. Brinegar v. United States (1949), 338 U.S. 160; State v.Timson (1974), 38 Ohio St.2d 122. The probable cause standard requires significantly less than the "beyond a reasonable doubt" standard required for conviction. Brinegar, supra. Probable cause is also less than that amount of evidence necessary to make out a prima facie showing of guilt.Spinelli v. United States (1969), 383 U.S. 410. Probable cause has been defined as a "fair probability" that criminal activity is afoot. Statev. George (1989), 45 Ohio St.3d 325.
{¶ 19} Here, the trial court found that Deputy Bodine's observations of Desman's unsafe lane change gave the officer probable cause to stop Desman. Accordingly, it found that no violation of Desman'sFourth Amendment rights arose from the stop of Desman's vehicle. In making this determination, the trial court relied on the testimony provided by Bodine and Hutsonpillar.
{¶ 20} Bodine and Hutsonpillar testified that they were following the Yukon east on I-70. Bodine testified that he observed Desman make an unsafe lane change after passing a semi truck. Bodine testified that he observed the semi hitting its brakes in order to refrain from running into the back of Desman's vehicle. Hutsonpillar testified that he observed the semi truck slow down as a result of Desman's unsafe lane change. On the strengths of those observations, the trial court found that the traffic stop initiated by the police was sufficiently based upon the probable cause that the driver of the Yukon had committed a traffic violation.
{¶ 21} We find that the trial court's findings of facts as to Desman's traffic violation are supported by competent, credible evidence in the record. Further, accepting those facts as true, we agree with the trial court that the officers had probable cause to stop Desman for an observed traffic violation. Dayton v. Erickson. Because the officers had probable cause to stop Desman, Desman's Fourth Amendment rights were not violated. Id.
{¶ 22} Desman's first and second assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
{¶ 23} "The trial court erred to the prejudice of the appellant in determining that there was voluntary consent given to the officers to execute a search of the vehicle."
FOURTH ASSIGNMENT OF ERROR
{¶ 24} "The trial court erred to the prejudice of the appellant in concluding that the stop and search of the motor vehicle was not excessive."
{¶ 25} Desman's third and fourth assignments of error are interrelated. Therefore we will address them together. In his fourth assignment of error, Desman argues that the scope of the traffic stop was unreasonably extended. In his third assignment of error, Desman argues that he never voluntarily consented to canine search of his vehicle.
{¶ 26} As we discussed previously, police had probable cause to stop Desman for an observed traffic violation. Once a police officer legitimately stops a vehicle for a traffic violation, the driver may be detained for only as long as the officer continues to have reasonable suspicion that there has been a violation of the law. State v. Meyers
(1990), 63 Ohio App.3d 765. Resolution of that suspicion by issuance of a citation terminates the basis for the detention. The detention may not be attenuated beyond its reasonable purposes.
{¶ 27} The trial court found that Desman's stop was not extended in order to conduct the canine sniff. The record contains competent, credible evidence that the canine drug sniff occurred before Officer Bodine had received the information he had requested on the Yukon's license plates that was necessary to complete the original traffic citation.
{¶ 28} Bodine testified that he was unable to recall the exact moment when his on-board computer relayed required information. However, he did recall that he had not yet begun to write the citation for the unsafe lane change prior to conducting the canine drug sniff of the exterior of Desman's vehicle. (Tr. 250) Based upon the fact that he had not started to write the citation, Bodine surmised that he had not yet received the information prior to the canine sniff. (Tr. 250-51).
{¶ 29} The trial court further found that the canine sniff did not constitute a search within the meaning of the Fourth Amendment. "It is well established that a drug dog sniff does not constitute a search."State v. Byczkowski (Nov. 16, 2001) Green App. No. 2001-CA-31. However, as long as a drug dog sniff occurs in the time before the reasonable completion of the citation for which a defendant was originally stopped, an officer need not have a reasonable suspicion that a vehicle contained contraband to conduct a dog sniff of the vehicle. When there is a gap of time between the completion of the citation and the arrival of the canine unit, the court must address the issue of whether or not that period constituted a lawful detention of the defendant. Byczkowski, supra.
{¶ 30} The trial court found that the resulting search of the interior of the vehicle was premised upon the probable cause derived from the narcotics dog's alerting to the odor of drugs emanating from the vehicle.
{¶ 31} We find that the trial court's findings of facts concerning the canine sniff are supported by competent, credible evidence in the record. Further, accepting those facts as true, we agree with the trial court that canine sniff of the exterior of the Yukon was not a search as contemplated by the Fourth Amendment. There is no evidence that Desman's traffic stop was extended by, or for the purpose of, the dog sniff The record shows that only twelve minutes had elapsed from the stop to the canine search of the vehicle. We agree with the trial court that once the narcotics dog alerted to the scent of drugs in the vehicle, the police then had probable cause to conduct a search of the vehicle's interior.
{¶ 32} Because the police had probable cause to stop Desman and the traffic stop and that stop was not extended by or for the canine sniff, the canine sniff did not constitute a Fourth Amendment search. Therefore, whether Desman consented to the canine sniff is irrelevant. Desman's third and fourth assignments of error are overruled.
FIFTH ASSIGNMENT OF ERROR
{¶ 33} "The trial court erred to the prejudice of the appellant in failing to recognize the actions of the police as being purely manipulative."
{¶ 34} Desman argues that the police officers acted in a manipulative manner because the traffic stop was merely an excuse to search Desman's vehicle for drugs.
{¶ 35} An officer's subjective intent or motivation for stopping a vehicle is not relevant to the issue of whether a traffic stop violates the Fourth Amendment. Rather, a traffic stop is constitutionally valid if the officer has a reasonable articulable suspicion or probable cause to believe that any criminal violation had occurred. Dayton v. Erickson,supra.
{¶ 36} As we explained in our discussion of Desman's first two assignments of error, the police had probable cause to believe that Desman committed a traffic violation by making an unsafe lane change. Consequently, the traffic stop was lawful regardless of the Officer's underlying motivation for the stop. Additionally, there is no evidence that the officers engaged in any unlawful or inappropriate behavior once Desman was stopped. The fifth assignment of error is overruled.
{¶ 37} Having overruled all of Desman's assignments of error, we will affirm the trial court's decision overruling Desman's motion to suppress and Desman's conviction.
Fain, P.J. and Young, J., concur.