OPINION
{¶ 1} Defendant-appellant Merle Hudson appeals from his conviction and sentence for Possession of Cocaine, to which he pled no contest after the trial court denied his motion to suppress evidence obtained in what was initially a traffic stop. Hudson contends that the evidence was obtained as the result of an initially lawful detention for the purpose of issuing a citation for driving under a suspension, which was unreasonably prolonged, so that the trial court erred by denying his motion to suppress. We conclude that there is evidence in the record from which the trial court could find that Hudson's lawful detention was not unreasonably prolonged. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 2} In December, 2002, Bradford Police Officer Luke Colbert was on routine patrol in the village of Bradford when he observed Hudson drive by in an automobile. Because Colbert had previously been informed that Hudson's operator's license was suspended, he followed Hudson, while checking on his license number. When Colbert confirmed that Hudson's license had been suspended, Colbert initiated a traffic stop.
 {¶ 3} As Colbert approached Hudson's vehicle, Hudson exited the vehicle and walked up to Colbert. Hudson presented papers indicating that he had driving privileges on suspension. While speaking with Hudson, Colbert noticed that Hudson was nervous, and that his hands were shaking so much that it appeared a "little bit odd." Colbert also noticed that Hudson had a "moderate odor" of alcohol on his breath, and that he staggered slightly when he was walking. When it was determined that Hudson was driving at a time that the privileges were not in effect, Colbert informed Hudson that he would write a citation for driving under suspension. Colbert told Hudson to wait in his vehicle. Hudson and Colbert returned to their respective vehicles. This exchange took approximately two minutes.
 {¶ 4} Back in his cruiser, Colbert placed a call to dispatch and began writing the citation. Approximately one minute later, Hudson again exited his vehicle and walked back to speak with Colbert. Colbert stopped Hudson and told him to return to his car. Colbert returned to writing the citation. About one minute later, Hudson exited his vehicle, and Colbert told him to just have a seat in the cruiser to avoid being hit by passing traffic. While in the cruiser and filling out the citation, Colbert asked Hudson if he could search Hudson's vehicle. Hudson refused. Approximately eight minutes had elapsed by this point.
 {¶ 5} Colbert then called dispatch and requested a canine unit. He next administered a portable breath test, while Hudson was in the cruiser. When Hudson passed the test, Colbert resumed writing the citation. Colbert stopped writing a couple of times to respond to questions posed by Hudson. Colbert had not completed the citation at the point the canine unit arrived. At this point, the stop had continued for fifteen minutes. Colbert exited the vehicle and approached Hudson's vehicle with the canine unit which immediately alerted. All of this occurred within twenty minutes of the initial stop. According to Colbert, it typically takes approximately twenty minutes to write a citation for driving under a license suspension.
 {¶ 6} Colbert searched Hudson's vehicle, and found a bag of a white powdery substance determined to be cocaine. Hudson was then arrested and ultimately indicted on one count of Possession of Cocaine, in violation of R.C. 2925.11(A)(C)(4)(c). He filed a motion to suppress evidence, including the cocaine and the officer's observations during the stop. .
 {¶ 7} Following a hearing on the motion to suppress, the trial court denied the motion. The trial court found that the dog-sniff did not constitute a search and that it was conducted during a lawful stop that was not unreasonably prolonged. Thereafter, Hudson entered a plea of no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Hudson appeals.
 II {¶ 8} Hudson's sole Assignment of Error states as follows:
 {¶ 9} "The conviction should be reversed because the evidence showed that the officer prolonged the stop longer than necessary to write a citation for driving under suspension, and therefore appellant's Fourth Amendment Right to Privacy was violated."
 {¶ 10} In his sole Assignment of Error, Hudson contends that the trial court erred in failing to sustain his motion to suppress because the evidence demonstrates that the officer unnecessarily prolonged the stop. Hudson argues that the officer lacked a reasonable, articulable suspicion that Hudson was driving while intoxicated, and therefore had no basis for administering the portable breath test, which prolonged the stop. He also argues that the officer had no reasonable, articulable suspicion that there were drugs in the vehicle, so that the time spent waiting for the canine unit was unnecessary.
 {¶ 11} "When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses." State v. Keller (Jan. 14, 2000), Montgomery App. No. 17896, citation omitted. If the trial court's findings of fact are supported by competent, credible evidence, the reviewing court must accept those findings. Id. However, we review any conclusions of law on a de novo basis. Id.
 {¶ 12} Hudson has not challenged the validity of the original stop. The use of a trained narcotics dog does not constitute a search; therefore, an "officer need not have formed a reasonable suspicion that drug-related activity is occurring in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle." Keller, supra, citations omitted. Consequently, the issue is whether Hudson was unreasonably detained during the interval between the initial stop and the moment that the drug-sniffing dog alerted to narcotics in his vehicle.
 {¶ 13} We discussed this issue in State v. Ramos,155 Ohio App.3d 396, 2003-Ohio-6535, wherein we stated:
 {¶ 14} "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. `When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. * * * In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'
 {¶ 15} "In State v. Loffer, Montgomery App. No. 19594, 2003-Ohio-4980, we held that when the search of a vehicle occurs during a reasonable period of time for processing a traffic citation, i.e., during a period of lawful detention, a police officer need not have a reasonable articulable suspicion of criminal behavior other than the traffic infraction.
 {¶ 16} "However, after the reasonable period of time for issuing the traffic citation has passed, an officer must have a reasonable articulable suspicion of illegal activity to continue the detention. The Supreme Court of Ohio has explained: `When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.' When a canine drug search is involved, the police must have a reasonable suspicion that a vehicle contains drugs in order to detain a suspect further while a drug-sniffing canine is brought to the scene." Ramos, supra at 401-402, 2003-Ohio-6535, ¶¶ 10-13.
 {¶ 17} Thus, "[o]nce a police officer legitimately stops a vehicle for a traffic violation, the driver may be detained for only as long as the officer continues to have reasonable suspicion that there has been a violation of the law." State v.Desman, Montgomery App. No. 19730, 2003-Ohio-7248, ¶ 26, citation omitted. "Resolution of that suspicion by issuance of a citation terminates the basis for the detention. The detention may not be attenuated beyond its reasonable purposes." Id.
 {¶ 18} We conclude that even if the administration of the portable breath test was not warranted in this case, the evidence in the record does not require a finding that the stop was unduly prolonged. To the contrary, the record indicates that the canine sniff occurred within the normal amount of time for issuing a citation for driving under a suspension, the offense for which Hudson was being cited.
 {¶ 19} We conclude that the trial court's findings of facts concerning the canine sniff are supported by competent, credible evidence in the record. We agree that the canine sniff of the exterior of the vehicle was not a search as contemplated by theFourth Amendment. There is no evidence that Hudson's traffic stop was extended by, or for the purpose of, the dog sniff. The record shows that only twenty minutes had elapsed from the initial stop to the canine alerting to the vehicle. Once the narcotics dog alerted to the scent of drugs in the vehicle, the police then had probable cause to conduct a search of the vehicle's interior.
 {¶ 20} Because Colbert had probable cause to stop Hudson for the purpose of citing him for driving under a suspension, and that stop was not extended beyond the normal time for accomplishing that purpose, neither the canine sniff nor the administration of the portable breath alcohol test can be said to have unduly prolonged the stop, and therefore neither of these procedures implicated Hudson's Fourth Amendment right to be free from unreasonable searches and seizures.[1]
 {¶ 21} The sole assignment of error is overruled.
 III {¶ 22} Hudson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Young, JJ., concur.
[1] Of course, any evidence that might have resulted from the breath alcohol test, itself, would be subject to suppression if the officer lacked an appropriate basis for requiring Hudson to subject himself to that test, but the only evidence resulting directly from the breath alcohol test was exculpatory. Hudson tested negative for alcohol on his breath.