OPINION
{¶ 1} Kenneth Colton is appealing the judgment of the Montgomery County Common Pleas Court, which convicted him of cocaine possession.
 {¶ 2} In the early evening of March 4, 2004, Brad Daugherty, a deputy sheriff, was on patrol in Harrison Township near Salem Avenue. Daugherty had been with the sheriff's office for four years, but had patrolled this area for only a month. Within that month, Daugherty made five or six drug arrests.
 {¶ 1} While Daugherty was patrolling, he noticed two cars parked along the side of the road. Two men were standing between the cars talking. One of the men was Colton. As Daugherty approached, the men looked in his direction, separated, and got into their cars. Based on his experience, Daugherty suspected he had interrupted a drug transaction.
 {¶ 2} Daugherty passed the two cars, turned onto a side street, and pulled into a parking lot. Daugherty saw Colton initially turn down the same side street. But when Colton seemingly observed Daugherty, he suddenly made a u-turn and changed direction. Believing Colton was trying to avoid him, Daugherty followed him.
 {¶ 3} Daugherty saw Colton pull up next to the same car he had previously been observed with and point back towards Daugherty. Daugherty followed Colton onto another street where he observed Colton pull into the driveway of a vacant house. Colton remained in his car until the second driver he had previously been with pulled into the driveway as well. Colton and the driver of the second car got out of their vehicles and spoke briefly. The two men walked out of Daugherty's view. When Colton and the second driver returned to their cars, they pulled onto the road and went in different directions.
 {¶ 4} Daugherty followed Colton. While doing so, Daugherty looked for a rear license plate or temporary license tag on Colton's vehicle. Since no tags were visible from the rear of the vehicle, Daugherty initiated a traffic stop.
 {¶ 5} While approaching the car on foot, Daugherty noticed a temporary license tag in the bottom of the car's rear window. But, due to the angle of the window and the glare on the window, the tag was not visible from behind. Since the tag was not visible, Daugherty continued with the stop. Daugherty had Colton exit the vehicle. The temporary license tag was from Tennessee and had white out on it. Daugherty suspected based on his experience that the white out was used to make an expired temporary license tag appear valid. Colton was patted down for weapons and placed in the rear of the cruiser.
 {¶ 6} Daugherty called his dispatcher to check the tag number, the VIN, and Colton's license. In order to check the tag number and VIN, the dispatcher had to call Tennessee. While waiting to hear back from the dispatcher, Daugherty requested a drug canine sniff of Colton's vehicle. Daugherty worked on filling out a Form 16 as required by the department, and a citation for failing to properly display a license tag. In a short time, the dispatcher communicated that Daugherty's license tag had not expired and the VIN corresponded to the tag. However, before Daugherty finished the improper display citation, the officer with the canine arrived.
 {¶ 7} When the officer led the canine around the car, the canine alerted to the odor of drugs on the driver's side door. Thus, Daugherty stopped writing the citation and searched Colton's car. The search revealed an aerosol can with a false bottom. A small bag containing powder cocaine was found inside the can. Colton was arrested and taken to jail.
 {¶ 8} Colton was indicted on one count of possession of cocaine. Colton filed a motion to suppress. A hearing was held, and the motion was subsequently denied. Colton pled no contest to the charge. The trial court found Colton guilty, sentenced him to five years of community control sanctions, and suspended his license for six months.
 {¶ 9} Colton is appealing his conviction, raising the following assignments of error:
 {¶ 10} "[1.] The denial of the motion to suppress should be reversedbecause the stop of an individual is unlawful when the officer does nothave any reasonable articulable suspicion that the individual was engagedin criminal activity.
 {¶ 11} "[2.] The denial of the motion to suppress should be reversedbecause the evidence showed that the officer prolonged the stop longerthan necessary to write the citation and therefore appellant's FourthAmendment rights were violated."
 {¶ 12} In both of Colton's assignments of error, he argues the court should have granted his motion to suppress. The following standard governs our review of a trial court's decision regarding a motion to suppress:
 {¶ 13} "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994),93 Ohio App.3d 586, 592.
Appellant's first assignment of error:
 {¶ 14} Colton argues the trial court should have granted the motion to suppress because Daugherty's stop of Colton's vehicle was unlawful. We disagree.
 {¶ 15} An officer may initiate a traffic stop if he has information that would cause a prudent person to believe a law has been violated.State v. Desman, Montgomery App. No. 19730, 2003-Ohio-7248, at ¶ 17-18. R.C. 4503.21(A) requires that a temporary license placard be displayed in plain view in either the rear window or the rear surface of the vehicle. No material may be placed over the placard that obstructs its visibility. Id.
 {¶ 16} Daugherty initiated the traffic stop of Colton because he suspected a violation of R.C. 4503.21(A). Traveling in the cruiser behind Colton, Daugherty could not see a license plate or a temporary license tag. Only when Daugherty was approaching Colton's vehicle on foot did he see the tag laying in the rear window. But, this was still a violation of R.C. 4503.21(A) because the angle of the tag and the glare from the window prevented the tag from being visible from behind. Thus, a law had been violated and Daugherty was correct to stop and detain Colton long enough to issue him a citation. Daugherty's stop of Colton was lawful and did not create grounds to suppress the seized evidence.
 {¶ 17} Colton's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
 {¶ 18} Colton argues the trial court erred in overruling his motion to suppress because Daugherty prolonged the stop longer than necessary. We disagree.
 {¶ 19} The officer may detain the motorist long enough to issue "a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates." Statev. Ramos 155 Ohio App.3d 396, 2003-Ohio-6535, at ¶ 11, quoting Statev. Aguirre, Gallia App. No. 03CA 5, 2003-Ohio-4909. However, a traffic stop may only last a reasonable time unless specific articulable facts exist that warrant an extension of the detention. Ramos, supra, at ¶ 10. In determining whether the length of the stop was reasonable, a court must consider the totality of the circumstances surrounding the detention and whether the officer was diligent in his investigation. Id. at ¶ 11. If the canine sniff is conducted before the completion of the routine traffic stop procedures, no additional suspicion of criminal activity is needed for the sniff. Id. at ¶ 12; Desman, supra, at ¶ 29. But if the traffic stop is extended beyond a reasonable time for the purpose of conducting the sniff, the police officer must have a reasonable suspicion that the vehicle contains drugs. Ramos, supra at ¶ 13.
 {¶ 20} Colton argues the length of time from the traffic stop to the arrival of the canine, 27 to 29 minutes, was unreasonable. Daugherty testified that when he stopped Colton he removed him from the vehicle. He explained he did this for his own safety and he patted Colton down for weapons. He secured Colton in the rear of his cruiser while he obtained the VIN. Before checking Colton's information, Daugherty asked him a few questions regarding what he was doing. Daugherty noticed the tag had white out on it which made him suspect it was expired. In order to determine if it was valid, Daugherty called his dispatcher. However, checking Colton's tag and the VIN took longer than normal because it was from Tennessee. The dispatcher had to contact the state of Tennessee to determine if they were valid.
 {¶ 21} Before the dispatcher informed Daugherty that the tag and VIN were valid, Daugherty contacted his supervisor to request the canine sniff of the vehicle. Once the supervisor approved the sniff, Daugherty contacted the dispatch to have a canine sent to the location. Daugherty proceeded to fill out a Form 16, which is similar to a citation and must be completed for every traffic stop. Daugherty also was completing the citation for the improper display of a rear license tag. Shortly before the canine arrived, he received information from his dispatcher that the tag and VIN were valid. However, Daugherty had not yet completed the citation upon the canine's arrival. Only after the canine alerted on the vehicle did Daugherty stop working on the citation and search Colton's vehicle.
 {¶ 22} Although the length of the traffic stop was longer than normal, we cannot find that it was excessively prolonged. Daugherty took several steps during the stop, including removing Colton from the vehicle, collecting information from the vehicle, and calling the information into his dispatcher. Checking the tag and VIN took longer than normal because they required checking with the state of Tennessee. It certainly was reasonable to wait for a response from the state of Tennessee as the tag had white-out on it. Daugherty had to complete the Form 16 and the citation. There is no evidence that Daugherty excessively prolonged the traffic stop.
 {¶ 23} We cannot find that Daugherty prolonged the traffic stop beyond a reasonable time. Colton's second assignment of error is without merit and is overruled.
 {¶ 24} The judgment of the trial court is affirmed.
Brogan, P.J. and Fain, J., concur.