[Cite as *State v. McDaniel*, **2012-Ohio-3286**.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

STATE OF OHIO                                   :

      Plaintiff-Appellee                     :          C.A. CASE NO.    2010 CA 13

v.                                              :          T.C. NO.    09CR299

CASEY A. McDANIEL                               :          (Criminal appeal from
                                                           Common Pleas Court)

      Defendant-Appellant                    :

                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___20th___ day of ___July___, 2012.

. . . . . . . . . .

NICK A. SELVAGGIO, Atty. Reg. No. 0055607, Prosecuting Attorney, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**   Defendant-appellant Casey A. McDaniel appeals a decision of the

Champaign County Court of Common Pleas overruling her motion to suppress filed on February 17, 2010. A hearing was held on the motion on February 23, 2010. On March 1, 2010, the trial court issued a written decision overruling the motion. After pleading no contest to one count of possession of heroin, in violation of R.C. 2925.11(A)(C)(6)(a), a felony of the fifth degree, McDaniel filed a timely notice of appeal with this Court on May 20, 2010. For the following reasons, the judgment of the trial court is affirmed.

{¶ 2} The incident that forms the basis for the instant appeal occurred at approximately six p.m. on Friday, October 30, 2009, when Sergeant Steve Eck of the Mechanicsburg Police Department initiated a traffic stop of a vehicle operated by McDaniel after he noticed that the driver's side headlight was not functioning. Upon approaching the vehicle, Sgt. Eck asked McDaniel for her license, registration, and proof of insurance. Sgt. Eck testified that out of concern for his safety, he asked McDaniel if he needed to be concerned about anything in the vehicle. McDaniel did not immediately respond. As a result, Sgt. Eck repeated his question. Upon being asked a second time, McDaniel admitted that she had a marijuana pipe, but stated there was nothing else in the vehicle. Sgt. Eck testified that McDaniel handed the pipe over to him, and he ordered her out of the vehicle.

{¶ 3} After McDaniel exited the vehicle, Sgt. Eck testified that he observed a cut section of straw on the driver's seat that had been covered by McDaniel's right thigh. When Sgt. Eck asked McDaniel what substance was in the straw, she responded that it was heroin. McDaniel also stated that the straw was old, and she no longer used heroin. Sgt. Eck testified that he then arrested McDaniel, placed her in the back of his cruiser, and informed her of her *Miranda* rights. Along with another officer who arrived at the scene,

Sgt. Eck performed a more thorough search of the vehicle, wherein he discovered two additional straws also containing heroin.

{¶ 4} Following her indictment on December 10, 2009, for possession of heroin and possession of drug paraphernalia, McDaniel filed a motion to suppress which was subsequently overruled by the trial court. On March 8, 2010, McDaniel plead no contest to one count of possession of heroin. As part of the plea deal, the possession of drug paraphernalia count was dismissed. The trial court found McDaniel guilty of possession of heroin and sentenced her to three years of community control. It is from this judgment that McDaniel now appeals.

{¶ 5} Initially, we note that McDaniel's original appellate counsel submitted a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, asserting that no arguably meritorious issues existed for appeal. After conducting an independent review of the record, we identified two potential issues, to wit: (1) whether the evidence offered at the suppression hearing affirmatively established the lawfulness of the initial stop for the headlight violation, and (2) whether McDaniel was unlawfully detained after the basis for the stop had dissipated. Accordingly, we set aside the *Anders* brief and appointed new counsel to represent McDaniel. In addition to the potential issues we identified, McDaniel argues that any statements she made to police were involuntary and made without the benefit of her *Miranda* warnings.

{¶ 6} McDaniel's sole assignment of error is as follows:

{¶ 7} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

{¶ 8} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 9} McDaniel has broken down her single assignment of error into three subsections, which we will review in order as follows:

{¶ 10} (A) **The initial traffic stop for a purported headlight violation was unlawful as the alleged violation was not affirmatively established by the evidence adduced at the motion to suppress hearing.**

{¶ 11} In this section, McDaniel contends that Sgt. Eck's articulated basis for the stop, that the driver's side headlight on her vehicle was not functioning, was not affirmatively established by evidence adduced at the suppression hearing. Specifically, McDaniel argues that the evidence established that Sgt. Eck was not in a position to observe whether her headlights had been activated. McDaniel also directs us to her testimony at the suppression hearing wherein she stated that both of her headlights were on when she drove past Sgt. Eck.

{¶ 12} It is well settled that a police officer may initiate a stop based on a

reasonable articulable suspicion that a minor traffic violation has occurred. *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 8. Sgt. Eck testified that from his vantage point, he "could tell for sure" that the driver's side headlight was not functioning, and that was his stated basis for initiating a stop of McDaniel's vehicle. Sgt. Eck further testified that after he stopped the vehicle, he observed that the entire headlight assembly was missing. Although McDaniel testified that her headlights were on and functional on the night in question, the trial court specifically found Sgt. Eck's testimony to be more credible, namely that her vehicle was lawfully stopped because of a "non-operating headlight." The record clearly establishes that competent, credible evidence was adduced at the hearing which supports the trial court's finding of fact regarding the inoperable headlight being the basis for the stop, and we must, therefore, defer to the trial court's ruling.

**{¶ 13} (B) Sergeant Eck unlawfully expanded the investigation and detained McDaniel beyond the scope of the detention that was reasonably necessary to effectuate the purpose of the initial stop for an alleged headlight violation.**

{¶ 14} In this section, McDaniel asserts that Sgt. Eck unlawfully expanded the investigation and expanded the scope of the detention necessary during a stop for a minor traffic violation when he asked her if he needed to be concerned about anything in the vehicle. Sgt. Eck testified that he asked McDaniel the question at the same time he asked her for her driver's license, registration, and proof of insurance. Sgt. Eck further testified that he merely asked the question out of a concern for his safety because there were three other individuals in the vehicle besides McDaniel.

{¶ 15} The Fourth Amendment of the United States Constitution guarantees "[t]he

right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." "It is well established that these guarantees are not implicated in every situation where the police have contact with an individual. The United States Supreme Court has created three categories of police-citizen contact to identify the situations where these guarantees are implicated.

{¶ 16} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. The request to examine one's identification does not make an encounter nonconsensual. Nor does the request to search a person's belongings. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court categories." *State v. Taylor*, 106 Ohio App.3d 741, 747-748, 667 N.E.2d 60 (2d Dist. 1995) citations omitted.

{¶ 17} "The second type of encounter is a '*Terry* stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have

believed that he was not free to leave or is compelled to respond to questions." *State v. Hardin*, 2d Dist. Montgomery No. 20305, 2005-Ohio-130, ¶15, quoting *State v. Taylor*.

{¶ 18} Once a police officer has made a legitimate and constitutional stop of a vehicle, the driver and the vehicle may be detained only for as long as the officer continues to have a reasonable suspicion that there has been a violation of the law. *Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498. In *State v. Loffer,* however, we held that when the search of a vehicle occurs during a reasonable period of time for processing a traffic citation, i.e., during a period of lawful detention, a police officer need not have a reasonable articulable suspicion of criminal behavior other than the traffic infraction. 2d Dist. Montgomery No. 19594, 2003-Ohio-4980.

{¶ 19} After the reasonable period of time for issuing the traffic citation has passed, an officer must have a reasonable articulable suspicion of illegal activity to continue the detention. *State v. Ramos,* 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523 (2d Dist.). When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. *Id*.

{¶ 20} Thus, "[o]nce a police officer legitimately stops a vehicle for a traffic violation, the driver may be detained for only as long as the officer continues to have reasonable suspicion that there has been a violation of the law." *State v. Desman,* Montgomery App. No. 19730, 2003-Ohio-7248, ¶26, citation omitted. "Resolution of that

suspicion by issuance of a citation terminates the basis for the detention. The detention may not be attenuated beyond its reasonable purposes." *Id*. at ¶ 17.

{¶ 21} In the instant case, the evidence does not support a finding that Sgt. Eck unlawfully extended the duration or scope of the traffic stop when he asked McDaniel if there was anything in the vehicle that he needed to be concerned about. The record establishes that Sgt. Eck asked the question contemporaneously with his request for McDaniel's license, registration, and proof of insurance. McDaniel, however, testified that Sgt. Eck asked the question about the contents of the vehicle approximately five minutes after the stop when he returned her license after running a computer check. McDaniel also testified that Sgt. Eck had not given her a ticket for the headlight violation at that point. Even if McDaniel's testimony was found to be more credible than Sgt. Eck's, it still does not establish that she was subjected to an unlawful, prolonged detention. There is nothing in the record which demonstrates that Sgt. Eck threatened or coerced McDaniel into revealing the presence of the marijuana pipe in her vehicle. Sgt. Eck merely asked a general question for his own personal safety during the traffic stop, and McDaniel voluntarily provided incriminating information which led to her eventual arrest. Upon review, we conclude that Sgt. Eck's question did not constitute a custodial interrogation nor did it unlawfully detain McDaniel beyond the scope of the detention necessary during a stop for a minor traffic violation.

{¶ 22} **(C) Appellant McDaniel's statements that she had a marijuana pipe and that the substance in the straw was heroin were involuntary and made without adequate warning and/or waiver of her *Miranda* rights.**

{¶ 23} In the final section of her first assignment, McDaniel contends that her incriminating statements regarding the pipe and the heroin were involuntary because Sgt. Eck did not advise her of her *Miranda* rights before effectuating a custodial interrogation during the traffic stop.

{¶ 24} We have already determined that McDaniel's statement regarding the presence of the marijuana pipe was entirely voluntary and not the result of custodial interrogation. Moreover, after McDaniel handed over the pipe, Sgt. Eck had probable cause to arrest McDaniel, as well as form a belief that additional evidence of drug activity was present in the vehicle. A police officer may search a vehicle incident to the arrest of an occupant when it is reasonable to believe that the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 343-344, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

{¶ 25} Upon directing McDaniel to exit the vehicle, Sgt. Eck observed a cut straw in plain view on the driver's seat. Sgt. Eck testified that in his experience, cut straws similar to the one found in McDaniel's vehicle, were used to snort narcotics. When Sgt. Eck asked about the straw, McDaniel voluntarily admitted that it was "heroin." At that point, McDaniel had not been handcuffed nor formally arrested. Sgt. Eck was merely in the process of removing her from the vehicle after he seized the marijuana pipe when he observed the cut straw and inquired about it. Accordingly, Sgt. Eck's contemporaneous question regarding the presence of the straw on the driver's seat, where McDaniel had just been sitting, did not constitute a custodial interrogation that required *Miranda* warnings.

{¶ 26} McDaniel's sole assignment of error is overruled.

{¶ 27} McDaniel's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.


Copies mailed to:

Nick A. Selvaggio
Michael R. Pentecost
Hon. Roger B. Wilson