[Cite as *State v. Standiford*, 2025-Ohio-5377.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 00007 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Fairfield County Municipal Court, Case No. 24 TRC 4977 |
| ROGER A. STANDIFORD, | |
| Defendant – Appellant | Judgment:   Affirmed |
| | Date of Judgment Entry:  December 1, 2025 |

**BEFORE:** William B. Hoffman; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** No Appearance, for Plaintiff-Appellee; SCOTT P. WOOD, for Defendant-Appellant.

OPINION

*Montgomery, J.*

**{¶1}** Defendant-Appellant, Roger A. Standiford (hereinafter "Appellant"), appeals from the Fairfield County Municipal Court decision overruling the motion to suppress evidence.  For the reasons below, we affirm.

**STATEMENT OF FACTS**

**{¶2}** On Sunday July 21, 2024, at approximately 2:26 a.m., in the city of Lancaster, Officer Marla Morehouse (hereinafter "Morehouse") was patrolling the area and came upon an intersection with a red flashing light, traveling westbound.  At that time in the morning, the intersection has a red flashing light for east/west traffic and a yellow

flashing light for north/south traffic, giving that traffic the right of way to proceed with caution. Morehouse properly stopped at her red flashing light and observed Appellant's vehicle traveling northbound at a slow rate of speed.

{¶3} Morehouse then observed Appellant's vehicle approach the intersection. Appellant stopped about one car length before the "stop bar," and stopped for approximately ten seconds. *Mtn. to Supp. Tr.*, at p. 9. Appellant then moved forward to the stop bar and stopped again for about five seconds before "slowly" proceeding through the intersection. Morehouse's video camera demonstrates there were no other vehicles in that area other than Appellant's and her cruiser.

{¶4} Appellant's driving caught Morehouse's attention, and she ultimately turned right to follow behind him. Morehouse testified that as she was following him, he hit the brakes for no apparent reason and then went through the next flashing yellow without stopping. Thereafter, Morehouse initiated a traffic stop. Morehouse encountered Appellant intoxicated. After investigating, Appellant was arrested and ultimately charged with violating R.C. 4511.22, slow speed, and R.C. 4511.19(A)(1)(a) and (A)(1)(d), operating a vehicle while under the influence of alcohol. Appellant also had an open container.

{¶5} Appellant initially entered pleas of not guilty. On September 4, 2024, Appellant filed a motion to suppress the evidence obtained against him after Morehouse stopped him. On November 6, 2024, the trial court conducted the hearing on the motion. The State called Morehouse, a 25-year police officer, to testify and admitted Morehouse's Axon body camera footage as Exhibit A. At the commencement of the hearing, counsel stated that although Appellant advanced several arguments to support the motion, he

wished to proceed <u>only</u> on the issue of whether Morehouse had reasonable and articulable suspicion to initiate the traffic stop.  See *Mtn. to Supp. Tr.,* at p. 4.

**{¶6}**    The trial court found that Morehouse did have reasonable and articulable suspicion to stop the Appellant for a violation of R.C. 4511.22(A), slow speed, and overruled Appellant's motion to suppress.  On January 16, 2025, Appellant entered a plea of no contest to one count of Operating a Motor Vehicle while Intoxicated, a violation of R.C. 4511.19(A)(1)(a), and he was sentenced accordingly.   On February 28, 2025, Appellant filed the instant appeal.

## ASSIGNMENT OF ERROR

**{¶7}**    "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED BY LAW ENFORCEMENT AFTER A TRAFFIC STOP."

## STANDARD OF REVIEW

**{¶8}**    "Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact." *State v. Durosko*, 2020-Ohio-3133, ¶ 15, citing *State v. Long*, 127 Ohio App.3d 328, 332 (1998).  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *Durosko*, ¶ 15, citing *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996).  A reviewing court is bound to accept the trial court's findings of fact when supported by competent, credible evidence. *Durosko,* ¶ 15, citing *State v. Medcalf*, 111 Ohio App.3d 142, 145 (1996).  Accepting the facts as true, the appellate court must independently determine, as a matter of law, whether the appropriate legal standard was met.  *Durosko,* ¶ 15; *State v. Beghin*, 2004-

Ohio-2654 (5th Dist.) (when reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard).

## ANALYSIS

### The Fourth Amendment and Traffic Stops Generally

{¶9}   The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures.  *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979). Generally, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.  *Id*.  Not every contact between a police officer and citizen implicates the Fourth Amendment.  *Id*.  "Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a 'seizure' has occurred." *State v. Berry*, 2018-Ohio-4791, ¶ 91 (citations omitted).

{¶10}  Ohio law recognizes three types of police-citizen encounters: consensual encounters, investigative detentions (also known as a *Terry* stop or "traffic stop"), and formal arrests. *Berry*, ¶¶ 21-22, citing *State v. Taylor*, 106 Ohio App.3d 741, 747-49 (1995).  Relevant here, a traffic stop is more intrusive than a consensual one, but less intrusive than a formal arrest. *Berry*, ¶ 25.  An officer may perform a brief investigative traffic stop when the officer has a reasonable and articulable suspicion that a crime has occurred, is occurring, or is imminent. *Terry v. Ohio,* 392 U.S. 1 (1968); *State v. Mays,* 2008-Ohio-4539, syllabus; *City of Bowling Green v. Godwin,* 2006-Ohio-3563, ¶ 15 (2006).

**{¶11}** To conduct a traffic stop, the officer must have an "objective" basis for suspecting the individual stopped has engaged or is engaging in criminal activity. *United States v. Cortez*, (1981) 449 U.S. 411; *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996) (reminding lower courts that whether a traffic stop violates the Fourth Amendment requires an objective assessment of the officer's actions based on circumstances known to the officer at the time). If "an officer's decision to stop a motorist for a criminal violation, including a traffic violation, *is* prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop *is* constitutionally valid." *Mays*, syllabus (holding that despite possible defenses, a traffic stop is constitutionally valid when a law enforcement officer witnesses a motorist drift over the lane markings, even without further evidence of erratic or unsafe driving); *Taylor*, at 749. In essence, the officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Berry,* ¶ 25.

**{¶12}** A traffic stop is limited in both duration and purpose and may only last as long as it takes the officer to either confirm or dispel the officer's suspicions. *Berry,* ¶¶ 21-22, citing *Taylor*, at 748. *State v. Hudson*, 2004-Ohio-3140, ¶ 17 (stating "[o]nce a police officer legitimately stops a vehicle for a traffic violation, the driver may be detained for only as long as the officer continues to have reasonable suspicion that there has been a violation of the law.").

**{¶13}** Importantly, reasonable suspicion is based on the totality of circumstances "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Hairston,* 2019-Ohio-1622, ¶10, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-38 (1991). This allows officers to *draw from their*

*experience* and specialized training to make inferences from the cumulative information available to them that may not alert an average, untrained person. *State v. Reece,* 2018-Ohio-150, ¶ 10 (5th Dist.), quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002), citing *Cortez*, at 417-418. And, although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to probable cause for an arrest, and it falls considerably short of satisfying a preponderance of the evidence standard. *Arvizu,* at 273; *Hairston,* ¶ 10 (recognizing that "the reasonable-suspicion standard is less demanding than the probable-cause standard used when analyzing an arrest.").[1]

**{¶14}** Traffic stops based upon the officer's observation of a traffic violation are constitutionally permissible, and facts sufficient for a conviction on the underlying infraction is not required. *State v. Reedy,* 2012-Ohio-4899, ¶ 18 (5th Dist.), citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12. All that is required is a reasonable belief by the officer that a violation occurred, even if the officer is ultimately mistaken. *Godwin,* ¶ 15; *Reedy*, ¶ 18 (stating that the issue we must resolve is whether a police officer may stop an individual when the officer <u>reasonably but mistakenly</u> believes the conduct is a violation of the law); *State v. Garnett*, 2010-Ohio-5865, ¶ 13 (10th Dist.) (holding that the exclusionary rule did not apply to the stop because the officer reasonably but mistakenly

---

[1]Some courts appear to confuse the issue of probable cause and reasonable suspicion in the context of traffic stops. To be clear, "probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a <u>stricter standard than reasonable and articulable suspicion</u>. *Mays*, ¶ 23, citing *State v. Evans* (1993), 67 Ohio St.3d 405, 411 (1993). Probable cause subsumes reasonable and articulable suspicion. *Id.* An officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop.

believed he observed a violation when the appellant failed to use his turn signal); *State v. Gunzenhauser*, 2010 Ohio 761, ¶ 16 (5th Dist.).

**Reasonable and Articulable Suspicion Existed for the Traffic Stop**

{¶15} In his sole assignment of error, Appellant questions whether there was reasonable articulable suspicion of unlawful activity to justify a traffic stop. Thus, Appellant does not challenge the facts but rather, challenges the trial court's application of the legal standard to those facts. Appellant argues that his two brief stops, one for about 10 seconds and the second for about 5 seconds, did not rise to the level of "reasonable suspicion" to justify a traffic stop. Appellant claims he was simply being cautious through the intersection as is required by a flashing yellow light. We disagree.

{¶16} The issue resolves not to whether Appellant in fact violated R.C. 4511.22(A), but rather, whether Morehouse had reasonable articulable suspicion that Appellant committed the traffic infraction. R.C. 4511.22(A) provides:

> No person shall stop or operate a vehicle at such a slow speed as to impede
>
> or block the normal and reasonable movement of traffic, except when
>
> stopping or reduced speed is necessary for safe operation or to comply with
>
> law.

{¶17} Morehouse observed Defendant's vehicle approach the intersection with the yellow flashing light, giving Appellant the right of way to proceed with caution. Appellant initially approached the intersection at a very slow rate of speed. *Mtn. to Supp. Tr.*, at p. 9. Appellant then stopped his vehicle for about ten seconds approximately one car length from the "stop bar" at the intersection. *Id*. Appellant then moved forward to the

"stop bar" and stopped again for at least five more seconds before proceeding through the intersection. Morehouse testified as follows:

Q: And what did you witness when you first observed this vehicle?

A: * * * I pulled up like I said, from the east to the west, stopped. As I approached I looked to the south and observed a vehicle driving at a slow rate of speed. The vehicle then stopped about a one car length from the stop bar. The vehicle stopped there for about ten seconds. At some point during this phase, I kind of reached up and had already activated my camera and then I turned it towards the vehicle. After that ten seconds or approximately ten seconds, the vehicle then moved up to the stop bar, waited another five seconds, and then proceeded northbound on High Street. * * *

Q: What happened next after observing him?

A: After he finally did clear the intersection, like I said he accelerated slowly, proceeded northbound. Once he cleared the intersection I then turned to northbound and followed him. In fact, I believe I even comment on my video that he had gotten my attention. So I proceeded to follow him. * * * He hit brakes for no apparent reason and went through the next flashing yellow without stopping. I initiated a traffic stop * * *.

Morehouse further testified:

Q: What was the defendant cited for?

A: Stopping in traffic slash - - I think I wrote slash slow speed, and then OVI. And then the passenger was also cited for open container in a motor vehicle. * * *

Q: And what is the nature of that violation that you cited him under for?

A: Stopping and impeding traffic. In this particular case I could have - - if he was traveling at the regular rate of speed and he hadn't stopped, I would have cleared the intersection. I never would have had contact with him.

Q: So who was impeded as a result of the defendant's driving that night?

A: Myself.

*Mtn. to Supp. Tr.*, at pp. 10, 11, 13-14.

**{¶18}** We conclude that the cumulative facts support a determination that Morehouse had a reasonable and articulable suspicion that Appellant was violating a traffic law, namely R.C. 4511.22(A), sufficient to justify a traffic stop. Appellant had a flashing yellow light and stopped twice before proceeding through the intersection at a very slow speed. The first stop was quite long and occurred well before the stop bar. Appellant stopped again for at least five more seconds. When he did proceed through, Morehouse testified that Appellant accelerated slowly. Morehouse also observed Appellant driving slowly even before he approached the intersection. Morehouse commented that "he had gotten my attention." *Mtn. to Supp. Tr.*, at pp. 10-11. Morehouse further testified that Appellant's driving impeded her travel as she did not feel safe proceeding through the intersection due to her observations. Morehouse followed Appellant and Appellant hit his brakes for no apparent reason and then did not stop at all

at the next flashing yellow light. Taken together, these facts meet the legal standard of reasonable and articulable suspicion.

{¶19} Appellant cites *State v. Beghin,* 2004-Ohio-2654 (5th Dist.)*,* for the proposition that this Court has held that slight delays before proceeding from a traffic light did not warrant a stop of the operator's vehicle. In *Beghin*, a police officer stopped his vehicle behind defendant's vehicle at a traffic light at approximately 2:00 a.m. When the light turned green, defendant waited for about five seconds before moving forward. Although the officer did not see defendant commit any traffic violations, he thought that his behavior was suspicious, and he stopped defendant. As a result of the evidence the officer obtained after the stop, defendant was charged with driving under the influence, driving under suspension or revocation, impeding traffic, and not wearing a seat belt. Defendant filed a motion to suppress. The trial court denied the motion and convicted him of all charges.

{¶20} The appellate court held the "slight delay" in proceeding forward was not a serious event and did not constitute a safety problem. *Id.*, at ¶ 22. Thus, the officer did not have reasonable, articulable suspicion to conduct the traffic stop and the trial court erred when it denied defendant's motion to suppress evidence. *Id.*, at ¶ 26. Similarly, in *Echols*, in the early morning hours with no other traffic present, the defendant's vehicle stopped at an intersection (with no stop sign or traffic signal) for approximately eight to ten seconds before he moved forward in a northerly direction, thereby prohibiting an immediate left turn by the officer who was traveling southbound. *State v. Echols*, 1998 Ohio App. LEXIS 2897, *2 (11th Dist.).

**{¶21}** Because the defendant stopped for no apparent reason, the officer turned his police cruiser around, activated his overhead lights, and stopped the driver. The officer discovered defendant was intoxicated and arrested him. *Id*. Defense counsel filed a motion to suppress, and the trial court denied same. On appeal, the Eleventh District determined that the brief delay did not justify the traffic stop and reversed the trial court's decision overruling the motion to suppress. Importantly however, in *Echols*, based on defendant's arguments at the suppression hearing and in his appellate brief, the court specifically analyzed "whether there was probable cause for the traffic stop" not whether the officer had reasonable suspicion to conduct a traffic stop. *Id*., at *4-5.

**{¶22}** We find both *Beghin* and *Echols* inapplicable. In *Beghin*, the defendant delayed once for only a few seconds at a traffic light before proceeding left, arguably a very common occurrence. The *Beghin* officer did not see defendant commit any traffic violations. In *Echols*, as stated, the court analyzed the situation under the heightened "probable cause" standard.

**{¶23}** Here, Appellant was driving slowly before even approaching the intersection. Appellant then stopped for at least 10 seconds well before the stop bar, then stopped again at the stop bar for at least 5 seconds. His driving caught Morehouse's attention. Importantly, Appellant did not need to stop at all, he had the flashing yellow light alerting him only to proceed with caution. Morehouse also observed Appellant hit the brakes for no reason as she followed behind him.

**{¶24}** To a veteran police officer drawing from years of experience, factual differences are important and can legitimately raise an officer's suspicion. Reasonable and articulable suspicion is based on the totality of circumstances "viewed through the

eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Hairston*, at ¶10. Thus, while one individual fact standing alone may be insufficient, we conclude the cumulative facts in this case were sufficient to justify the initial traffic stop due to a traffic violation, slow speed. *Id.,* at ¶ 16. As such, the trial court properly overruled Appellant's motion to suppress. **Appellant's sole assignment of error is overruled.**

## CONCLUSION

**{¶25}** Appellant's sole assignment of error is overruled. The decision of the Fairfield County Municipal Court overruling the motion to suppress is AFFIRMED.

**{¶26}** Costs to Appellant.

By: Montgomery, J.

Hoffman, P.J. and

Popham, J. concur.