[Cite as *State v. Rice*, 2013-Ohio-1071.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   25438 |
| v. | : | T.C. NO.   11CR3213 |
| LAWRENCE E. RICE, JR. | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

## O P I N I O N

Rendered on the ____22nd____ day of ____March____, 2013.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. No. 0031461, 1210 Talbott Tower, 131 N. Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}   Defendant Lawrence R. Rice appeals his conviction and sentence for one

count of possession of heroin, in violation of R.C. 2925.11(A), a felony of the second degree, which were entered upon his plea of no contest made following the trial court's denial of his motion to suppress. Rice filed a timely notice of appeal with this Court on October 26, 2012.

{¶ 2} The incident which forms the basis for the instant appeal occurred on September 15, 2011, at approximately 1:00 p.m. when Dayton Police Officer Nathan Speelman observed a maroon Chrysler 300 driven by Rice make an improper left-hand turn from Hoover Avenue onto James H. McGee Boulevard. Officer Speelman also observed that the window tint on Rice's vehicle potentially violated legal limits. Officer Speelman ran the vehicle's plates and discovered that the vehicle was registered to an older female. Officer Speelman testified that he could see that the vehicle was being driven by someone other than the registered owner, as the operator was male. The owner of the vehicle, in fact, was Rice's grandmother.

{¶ 3} After Rice pulled into the parking lot of a nearby car wash, Officer Speelman activated his overheard lights and initiated a stop of Rice's vehicle. Upon approaching the vehicle, Officer Speelman observed that Rice's hand was trembling as he presented his driver's license. Officer Speelman also observed that Rice was sweating profusely and breathing rapidly. After retrieving Rice's license, Officer Speelman returned to his cruiser to write a citation for an improper turn. Officer Speelman also contacted dispatch and requested a canine unit to respond to the scene.

{¶ 4} Officer Timothy Braun responded to the scene after Officer Speelman. Officer Braun immediately noticed that the tint on Rice's vehicle was very dark, and he

asked Officer Speelman if he could test the windows for a violation. Officer Speelman told him to go ahead, and Officer Braun tested the windows with a tint meter. The results of the test indicated that the tint on Rice's windows was greater than the legal limit. As a result, Officer Speelman added a window-tint violation to the traffic citation he issued Rice.

{¶ 5} While Officer Speelman was writing Rice's traffic citation, Officer Tonina Lamanna arrived at the scene of the stop with her K-9 partner, Raca. Accompanied by Officer Lamanna, Raca performed an open air sniff around Rice's vehicle. Raca "alerted" to the odor of narcotics by sitting down next to the vehicle. Officer Speelman searched the vehicle and discovered a baggie containing a small amount of marijuana and a baggie containing several pieces of heroin located under the front driver's seat of the vehicle. The officer's search of the vehicle also turned up a digital scale and a razor blade in the map pocket behind the front passenger's seat. Rice was subsequently arrested and taken into custody.

{¶ 6} On September 23, 2011, Rice was indicted by a Montgomery County Grand Jury for one count of possession of heroin, one count of possession of marijuana, and one count of possession of drug paraphernalia. At his arraignment on September 27, 2011, Rice stood silent, and the trial court entered a plea of not guilty on his behalf.

{¶ 7} Rice filed a motion to suppress on October 6, 2011, arguing that the police lacked a proper justification for stopping his vehicle. Rice also sought to suppress any statements he made to police after his arrest. Rice subsequently filed three supplemental motions to suppress, wherein he challenged the reliability of the open air sniff of his vehicle. After a hearing held on Rice's motion to suppress on April 19, 2012, the trial court issued a

decision overruling said motion on June 5, 2012. Rice subsequently filed a motion to reconsider the denial of his motion to suppress, but the trial court overruled that motion, as well.

{¶ 8} On August 24, 2012, Rice pled no contest to one count of possession of heroin, and the State dismissed the remaining counts. The trial court accepted his no contest plea, found him guilty, and sentenced him to four years in prison.

{¶ 9} It is from this judgment that Rice now appeals.

{¶ 10} Rice's first assignment of error is as follows:

{¶ 11} "THE DEFENDANT-APPELLANT WAS ILLEGALLY AND UNCONSTITUTIONALLY STOPPED, DETAINED, ARRESTED, SEARCHED AND SEIZED HEREIN, AND HIS MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED."

{¶ 12} in his first assignment, Rice argues that his motion to suppress should have been granted because Officer Speelman did not possess a reasonable, articulable suspicion to initiate a traffic stop of Rice's vehicle.

{¶ 13} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d

Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 14} When a police officer stops a vehicle based on probable cause that a traffic violation has occurred, the stop is not unreasonable under the Fourth Amendment of the United States Constitution, even if the officer has some ulterior motive for stopping the car. *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable, articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant, for purposes of Fourth Amendment review, 'whether the stop in question is sufficiently ordinary or routine * * *.' It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle." *Id.*, at 7, quoting *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir.1995). See *also State v. Desman*, 2d Dist. Montgomery No. 19730, 2003-Ohio-7248 (upholding traffic stop of vehicle for improper lane change when police had the vehicle under surveillance at the time for suspected drug activity).

{¶ 15} To have probable cause to issue a traffic citation, an officer must have information that is sufficient in nature and character to warrant a prudent person in believing that a violation of law has occurred. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Timson*, 38 Ohio St.2d 122, 311 N.E.2d 16 (1974). Probable cause is less than the beyond a reasonable doubt standard required for a conviction and less than the amount of evidence necessary to make a prima facie showing of guilt. *Id.* Probable

cause has been defined as a "fair probability" that criminal activity is afoot. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989).

{¶ 16}   In the instant case, Officer Speelman testified that he observed a moving violation.   He indicated that Rice failed to move into the left-most lane upon turning left onto James H. McGee Boulevard from Hoover Avenue.   On the citation that he issued to Rice at the scene of the stop, Officer Speelman specifically cited to the Dayton Revised Code of General Ordinances Section 71.30, which requires that when making a left turn at an intersection where at least one of the roadways is restricted to one-way travel, the turn must be made "so as to leave the intersection, as nearly as practicable, in the left-hand lane of the roadway being entered lawfully available to traffic in that lane." D.C.G.O. 71.30(C). We note that the trial court did not mention the illegal-turn violation witnessed by Officer Speelman in its decision overruling Rice's motion to suppress.   However, Officer Speelman's testimony that a reason for the stop was the illegal left-turn violation was unrebutted.

{¶ 17}   Additionally, Officer Speelman testified that when he observed Rice commit the illegal-turn violation, he also thought that the window tint on the vehicle was potentially greater than the legal limit.   This provided a second basis for the stop.   Officer Speelman's suspicion was confirmed when Officer Braun tested the window tint on Rice's vehicle and discovered that the tint level was forty-three percent, in clear violation of R.C. 4513.241(A) which requires that window tinting in motor vehicles must allow a light transmittance of not less than fifty-percent, plus or minus three percent.   A citation was issued for illegal window tint as well.   Accordingly, the trial court's finding that Rice was lawfully stopped

for a window tint violation is supported by the record.

{¶ 18} Rice's first assignment of error is overruled.

{¶ 19} Rice's second and final assignment of error is as follows:

{¶ 20} "THERE WAS NO PROBABLE CAUSE TO ARREST THE DEFENDANT BASED UPON THE DOG HANDLER, OFFICER LAMANNA, WHO REFUSED TO HONOR TWO VALIDLY ISSUED AND SERVED SUBPOENAS DUCES TECUM AND BRING TO COURT DOCUMENTS CONCERNING HER K9 AND HIS CERTIFICATION PERFORMANCE, ALTHOUGH THE DOCUMENTS WERE IN HER CAR, PARKED OUTSIDE THE COURTHOUSE AND WAS CERTIFICATION QUALIFIED AS AN EXPERT WITNESS BY THE STATE, ALTHOUGH TESTIFYING THAT THE DOG'S ALERT IS 'TOTALLY SUBJECTIVE' AND SHE IS THE ONLY ONE IN THE WORLD WHO WOULD KNOW WHETHER OR NOT THE DOG HAS ALERTED; IN VIOLATION OF DAUBERT AND [EVID.] RULE 702."

{¶ 21} In his final assignment, Rice challenges the reliability of the open air sniff performed by Officer Lamanna's K9 unit which resulted in the search of appellant's vehicle and the discovery of the contraband. Specifically, Rice argues that a K9 handler must produce his or her field notes and provide written evidence of training and certification before a trial court can deem the particular K9 unit reliable. Rice further asserts that no evidence was adduced that the K9 unit's alert was objectively observable regarding the odor of narcotics in the appellant's vehicle.

{¶ 22} A K-9 free air sniff is not a search under the Fourth Amendment, so there is no need for reasonable suspicion or probable cause to conduct a K-9 sniff. *State v. Hudson*,

2d Dist. Miami No. 2003-CA-39, 2004-Ohio-3140; *Illinois v. Caballes*, 534 U.S. 405, 125 S.Ct. 834, 160 L. Ed. 2d 842 (2005). When a trained narcotics dog alerts on a lawfully stopped vehicle, an officer has probable cause to search the vehicle. *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329. Once a narcotics-trained dog alerts to the presence of contraband, probable cause exists for a further search of the vehicle. *Id*.

{¶ 23} Initially, Rice argues that the State failed to establish the reliability of the K9 unit in the instant case because Officer Lamanna did not produce her field notes and provide written evidence of the K9's training and certification. We find this argument unpersuasive.

{¶ 24} Regarding her K9 partner's qualifications, Officer Lamanna testified that Raca was trained to detect the odor of illegal narcotics, specifically marijuana, ecstasy, heroin, cocaine, and methamphetamine. Officer Lamanna further testified that Raca was certified as a police K9 through the states of Ohio and Indiana. Officer Lamanna testified that she and Raca attend sixteen hours of additional training every month, in addition to an initial three-month training period consisting of tracking and narcotics detection. Although she did not produce them, Officer Lamanna testified that she also kept extensive records of Raca's training and documentation of the dog's performance at various real-life crime scenes.

{¶ 25} In order for a K9 alert to support a determination of probable cause, the State must establish the dog's reliability by adducing evidence of the K9's training and certification. *State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781, ¶ 25 (1st Dist.). Significantly, we have recently held that evidence of the K9's training and

certification may be either testimonial or documentary. *State v. Mangan*, 2d Dist. Montgomery No. 23263, 2009-Ohio-6137. In the instant case, Officer Lamanna provided the requisite testimonial evidence regarding Raca's training and certifications. Other than pointing out during cross-examination that Officer Lamanna did not bring her field notes and written evidence of Raca's training and certification, Rice was unable to undermine her credibility with respect to her testimony regarding the K9's training and certifications. Accordingly, it was not error for the trial court to find that the State sufficiently established that Officer Lamanna and Raca constitute a certified and reliable canine unit.

{¶ 26} As the State correctly noted its brief, there is no authority to support Rice's contention that Officer Lumanna's failure to produce field notes or training records somehow rendered her testimony inadmissible under Evid. R. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). At best, the failure to produce the documentary evidence goes the weight of Officer Lumanna's testimony, and not its admissibility.

{¶ 27} Lastly, Rice argues that Raca's alert to the odor of narcotics in his vehicle was not objectively observable, and therefore, could not support a finding of probable cause to search said vehicle. Officer Lamanna specifically testified that the alert that Raca was trained to make if she detects the odor of narcotics was simply to sit down near the area where the odor was detected. As the K9's handler, Officer Lamanna testified that she was uniquely qualified to recognize Raca's action of sitting down to be indicative of an alert. Officer Lamanna went on to testify that K9s are trained to alert to narcotics in different manners. Raca's manner of alerting for narcotics is to sit down. Because Officer Lamanna

was the individual who trained with Raca, she was aware that when the K9 sat down near Rice's vehicle, the dog had alerted that it had detected the odor of narcotics. Thus, the positive alert given by Raca regarding the presence of narcotics provided the police with probable cause to search Rice's vehicle.[1]

{¶ 28} Rice points out that on cross-examination, Officer Lamanna testified that Raca's alert was "one-hundred percent subjective." While this may serve to undermine our conclusion that the K9's alert was observable and objective, Officer Lamanna clarified her statement on re-direct examination. Officer Lamanna explained that unlike other K9s who may have been trained to alert in some other manner, Raca was trained to alert to the odor of narcotics by simply sitting down. Officer Lamanna knew what Raca's objectively observable alert was because she had trained with the K9 and understood its mannerisms.

{¶ 29} Rice's final assignment of error is overruled.

{¶ 30} All of Rice's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

---

[1]We note that the trial court mistakenly stated in its decision overruling Rice's motion to suppress that Raca's positive alert provided *"a reasonable and articulable suspicion of the presence of drugs in the vehicle."* The correct standard is whether Raca's alert provided the police with *probable cause* to search the vehicle. Regardless of this misstatement, the trial court's decision to overrule Rice's motion to suppress was correct because, as we have found, the facts adduced at the hearing clearly support the finding that the police had probable cause to search Rice's vehicle.

Andrew T. French
Daniel J. O'Brien
Hon. Gregory F. Singer